1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  DAVID T. WISSBROECKER (243867)
   EDWARD M. GERGOSIAN (105679)
3  655 West Broadway, Suite 1900
   San Diego, CA  92101
4  Telephone:  619/231-1058
   619/231-7423 (fax)
5  dwissbroecker@rgrdlaw.com
   egergosian@rgrdlaw.com
6
   JOHNSON & WEAVER, LLP
7  W. SCOTT HOLLEMAN
   99 Madison Avenue, 5th Floor
8  New York, NY  10016
   Telephone:  212/802-1486
9  212/602-1592 (fax)
   scotth@johnsonandweaver.com
10
   Attorneys for Plaintiff
11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY M. MATHEW, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> BROCADE COMMUNICATIONS SYSTEMS, INC., BROADCOM LIMITED, BROADCOM CORPORATION, DAVID L. HOUSE, LLOYD A. CARNEY, JUDY BRUNER, RENATO A. DiPENTIMA, ALAN L. EARHART, JOHN W. GERDELMAN, KIM C. GOODMAN, L. WILLIAM KRAUSE, DAVID E. ROBERSON and SANJAY VASWANI, <br><br> Defendants. | Case No. <br><br> <ins>CLASS ACTION</ins> <br><br> COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS <br><br><br><br><br><br> <ins>DEMAND FOR JURY TRIAL</ins> |

1    Plaintiff, by the undersigned attorneys, individually and on behalf of all others similarly

2    situated, respectfully brings this class action for breach of fiduciary duty and violations of §§14(a)

3    and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and U.S. Securities and

4    Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, against the herein named

5    defendants and alleges the following:

6                              **SUMMARY OF THE ACTION**

7        1.    This is a stockholder class action brought on behalf of the holders of Brocade

8    Communications Systems, Inc. ("Brocade" or the "Company") common stock against Brocade; its

9    Board of Directors (the "Board"); Broadcom Limited ("Ultimate Parent"), a limited liability

10   company organized under the laws of the Republic of Singapore; and Broadcom Corporation

11   ("Parent"), a California corporation and an indirect subsidiary of Ultimate Parent, for violations of

12   federal law arising out of the proposed sale of the Company to Ultimate Parent and its affiliates (the

13   "Proposed Acquisition") without disclosing all material information to Brocade shareholders

14   concerning the Proposed Acquisition.  Named as non-parties herein are LSI Corporation, a Delaware

15   corporation and an indirect subsidiary of Ultimate Parent ("LSI"), and Bobcat Merger Sub, Inc., a

16   Delaware corporation and a direct wholly-owned subsidiary of Parent ("Merger Sub," and with

17   Ultimate Parent, Parent and LSI, "Broadcom").  This matter arises out of defendants' dissemination

18   of a false and misleading proxy statement in violation of §§14(a) and 20(a) of the 1934 Act and SEC

19   Rule 14a-9 promulgated thereunder.

20       2.    Brocade's networking solutions help the world's leading organizations turn their

21   networks into platforms for business innovation.  With solutions spanning public and private data

22   centers to the network edge, Brocade is leading the industry in its transition to the new IP network

23   infrastructures required for today's era of digital business.  Brocade is headquartered in San Jose,

24   California.

25       3.    On November 2, 2016, Brocade and Broadcom announced that they had entered into

26   a definitive merger agreement (the "Merger Agreement") under which Brocade would be acquired

27   by Broadcom.  Following a vote of Brocade shareholders approving the Proposed Acquisition, under

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                              - 1 -

1  the terms of the Merger Agreement, Brocade stockholders will receive just $12.75 in cash for each

2  share of Brocade common stock held.

3       4.    The Proposed Acquisition significantly undervalues Brocade.  According to Yahoo!

4  Finance, at least one analyst has set a price target for Brocade stock of $14.00 per share.

5  Furthermore, the transaction is expected to add immediately to Broadcom's adjusted free cash flow

6  and earnings per share ("EPS").  Broadcom anticipates the new business will add about $900 million

7  to adjusted EBITDA in fiscal 2018.  If the Proposed Acquisition closes, Broadcom will also increase

8  its long-term operating margin target to 45% from 40%.

9       5.    The Proposed Acquisition is the result of an unfair sales process designed to ensure

10  that only Broadcom has an opportunity to acquire the Company.  The Proposed Acquisition was

11  driven by the Board and members of Company management who seek through the deal to secure

12  liquidity for millions of shares of illiquid Brocade stock.  Moreover, the Board members agreed to

13  deliver the Company to Broadcom in order to secure special material benefits for themselves and

14  Company management as a result of the Proposed Acquisition, including the accelerated vesting and

15  monetization of illiquid equity holdings in the Company and change-of-control severance payments

16  that will provide tens of millions of dollars in gains to the Board and members of Brocade

17  management.

18       6.    Moreover, defendants agreed to preclusive deal protection devices in the Merger

19  Agreement that create a playing field that is unfairly tilted in favor of Broadcom and effectively

20  chills any potential auction process for the Company, including "no shop" and matching rights

21  provisions and an excessive $195 million termination fee.

22       7.    In an attempt to secure shareholder support for the unfair Proposed Acquisition, on

23  December 6, 2016, defendants issued a materially false and misleading Preliminary Proxy Statement

24  on Schedule 14A, and on December 20, 2016, defendants issued a materially false and misleading

25  Definitive Proxy Statement on Schedule 14A (collectively, the "Proxy").  The Proxy, which

26  recommends that Brocade shareholders vote in favor of the Proposed Acquisition, omits and/or

27  misrepresents material information about the unfair consideration offered in the Proposed

28  Acquisition and the actual intrinsic value of the Company on a standalone basis and as a merger

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS     - 2 -

1  partner for Broadcom.  Specifically, the Proxy omits and/or misrepresents the material information

2  detailed *infra* at ¶¶66-71, in contravention of §§14(a) and 20(a) of the 1934 Act.

3       8.     As explained herein, this information is material to the decision of Brocade's

4  shareholders whether or not to vote in favor of the Proposed Acquisition.  As such, defendants'

5  violations of §§14(a) and 20(a) of the 1934 Act threaten shareholders with irreparable harm for

6  which money damages are not an adequate alternative remedy.  Thus, plaintiff seeks injunctive relief

7  to ensure that defendants cure their violations of §§14(a) and 20(a) and provide shareholders with all

8  material information about the fairness of the merger consideration and the Company's intrinsic

9  value.

10       9.     In sum, by agreeing to the Proposed Acquisition, each of the defendants has violated

11  the federal securities laws.  Rather than acting in the best interests of the Company's shareholders,

12  defendants spent substantial effort tailoring the structural terms of the Proposed Acquisition to

13  aggrandize their own personal interests and to meet the specific needs of Broadcom, which efforts

14  will eliminate the equity interest of Brocade's public shareholders.  Defendants have set a January

15  26, 2017 special meeting of Brocade's stockholders to vote on the Proposed Acquisition.

16       10.     Plaintiff seeks to enjoin the Proposed Acquisition.

17  **JURISDICTION AND VENUE**

18       11.     This Court has jurisdiction over the claims asserted herein pursuant to §27 of the

19  1934 Act for the violations of §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated

20  thereunder.

21       12.     This Court has jurisdiction over each defendant because each defendant is either a

22  corporation that conducts business in and maintains operations in this District, or is an individual

23  who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by

24  this Court permissible under traditional notions of fair play and substantial justice.

25       13.     Venue is proper in this District pursuant to 28 U.S.C. §1391, because Brocade's

26  headquarters are located at 130 Holger Way, San Jose, California, and defendants include an officer

27  and/or director who resides in California.

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS       - 3 -

**PARTIES**

14.     Plaintiff Bobby M. Mathew is, and at all times relevant hereto was, a shareholder of Brocade.

15.     Defendant Brocade is a Delaware corporation headquartered in San Jose, California.

16.     Defendant Ultimate Parent is a limited liability company organized under the laws of the Republic of Singapore.   Ultimate Parent is co-headquartered in San Jose, California and Singapore.

17.     Defendant Parent is a California corporation and an indirect subsidiary of Ultimate Parent.

18.     Non-party LSI is a Delaware corporation and an indirect subsidiary of Ultimate Parent.

19.     Non-party Merger Sub is a Delaware corporation and a direct wholly-owned subsidiary of Parent.

20.     Defendant David L. House is and at all times relevant hereto has been a member and Chairman of the Board of Brocade.

21.     Defendant Lloyd A. Carney ("Carney") is and at all times relevant hereto has been Brocade's Chief Executive Officer ("CEO") and a member of the Board.

22.     Defendant Judy Bruner is and at all times relevant hereto has been a member of the Board.

23.     Defendant Renato A. DiPentima is and at all times relevant hereto has been a member of the Board.

24.     Defendant Alan L. Earhart is and at all times relevant hereto has been a member of the Board.

25.     Defendant John W. Gerdelman is and at all times relevant hereto has been a member of the Board.

26.     Defendant Kim C. Goodman is and at all times relevant hereto has been a member of the Board.

1    27.    Defendant L. William Krause is and at all times relevant hereto has been a member of

2    the Board.

3    28.    Defendant David E. Roberson is and at all times relevant hereto has been a member

4    of the Board.

5    29.    Defendant Sanjay Vaswani is and at all times relevant hereto has been a member of

6    the Board.

7    30.    The defendants named above in ¶¶20-29 are sometimes collectively referred to herein

8    as the "Individual Defendants."

9    **CLASS ACTION ALLEGATIONS**

10    31.    Plaintiff brings this action individually and as a class action pursuant to Federal Rule

11    of Civil Procedure 23 on behalf of holders of Brocade common stock who are being and will be

12    harmed by defendants' actions described below (the "Class").  Excluded from the Class are

13    defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with

14    any defendants.

15    32.    This action is properly maintainable as a class action under Federal Rule of Civil

16    Procedure 23.

17    33.    The Class is so numerous that joinder of all members is impracticable.  According to

18    Brocade's SEC filings, there are more than 406 million shares of Brocade common stock

19    outstanding.

20    34.    There are questions of law and fact that are common to the Class and that

21    predominate over questions affecting any individual Class member.  The common questions include,

22    *inter alia*, the following:

23    (a)    whether defendants violated the federal securities laws as alleged in this

24    complaint, including violating and/or participating in a scheme to violate §§14(a) and 20(a) of the

25    1934 Act;

26    (b)    whether defendants have made false or misleading statements in the Proxy in

27    violation of §14(a) of the 1934 Act; and

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                    - 5 -

1    (c)    whether plaintiff and the other members of the Class would be irreparably

2  harmed were the transactions complained of herein consummated.

3    35.    Plaintiff's claims are typical of the claims of the other members of the Class and

4  plaintiff does not have any interests adverse to the Class.

5    36.    Plaintiff is an adequate representative of the Class, has retained competent counsel

6  experienced in litigation of this nature, and will fairly and adequately protect the interests of the

7  Class.

8    37.    The prosecution of separate actions by individual members of the Class would create

9  a risk of inconsistent or varying adjudications with respect to individual members of the Class,

10  which would establish incompatible standards of conduct for the party opposing the Class.

11    38.    Plaintiff anticipates that there will be no difficulty in the management of this

12  litigation.  A class action is superior to other available methods for the fair and efficient adjudication

13  of this controversy.

14    39.    Defendants have acted on grounds generally applicable to the Class with respect to

15  the matters complained of herein, thereby making appropriate the relief sought herein with respect to

16  the Class as a whole.

17                              **THE PROPOSED ACQUISITION**

18  **Background**

19    40.    Brocade provides storage area networking ("SAN") and Internet protocol ("IP")

20  networking solutions for businesses and organizations worldwide.  It operates through three

21  segments: SAN Products, IP Networking Products, and Global Services.  The SAN Products

22  segment offers infrastructure products and solutions, such as fiber channel SAN backbones, directors

23  and fabric/embedded switches, which assist customers in the development and deployment of

24  storage and server consolidation and disaster recovery and data security, as well as to meet

25  compliance requirements regarding data management, and fabric extension, switching and routing

26  solutions.  The IP Networking Products segment provides Layer 2 and Layer 3 switches and routers

27  that are designed to connect users over private and public networks, including local area, metro and

28  within and across data centers.

41.     Broadcom is a leading designer, developer and global supplier of a broad range of analog and digital semiconductor connectivity solutions.  Broadcom's extensive product portfolio serves four primary end markets: wired infrastructure, wireless communications, enterprise storage, and industrial and other.  Applications for its products in these end markets include: data center networking, home connectivity, broadband access, telecommunications equipment, smartphones and base stations, data center servers and storage, factory automation, power generation and alternative energy systems, and displays.

**The Company's Ongoing and Growing Success**

42.     Brocade has demonstrated its financial health and performance as a standalone business.  The Company has rebounded well from a temporary decline in revenues due to industry factors.

43.     The fundamental outlook for the communications equipment sub-industry in which Brocade operates is positive.  The continued rapid consumption of network capacity, buoyed by the proliferation of tablets and smartphones, is a solid long-term growth driver for the industry.  The domestic macro situation is improving and the European economic outlook is recovering.  While carriers have been cautious over the past several years due to the economy, spending should increase ahead as new technologies, such as Long Term Evolution ("LTE") in the wireless space, cloud computing, network security and big data needs continue to grow.  Accelerated wireless equipment funding is expected, driven by the emerging demand for wireless connectivity to things in both enterprise and household applications.  In the next 12 months, spending priorities may shift to the early stages of the fifth generation for wireless applications coming from a rapid rise in mobile broadband and increased use of smartphones and tablets.

44.     Reflecting these trends, on May 27, 2016, the Company completed its previously announced acquisition of Ruckus Wireless ("Ruckus").  As noted in the press release about the Ruckus closing:

> The combination expands the breadth of Brocade's portfolio of market-leading storage networking and IP networking solutions by adding high-performance wireless hardware and software products.  Wireless is a critical access technology for modern New IP network architectures and is a natural extension of Brocade's

advanced offering of fabrics, software-based virtualization, network analytics and mobile networking solutions.

Growth in mobility is driving exponential increases in connected devices and data, and fueling the need for greater analytics capabilities and more pervasive security across the network. The combined company's expertise and technology leadership in carrier-grade wireless, virtual Evolved Packet Core, mobile edge computing, and network visibility further strengthens the disruptive mobility strategy that Brocade announced in February. It also positions the company to provide differentiated solutions and scale-out capabilities in support of emerging opportunities, such as OpenG™ technology and 5G services, Internet of Things (IoT), and smart cities.

45.     Commenting on the Ruckus acquisition and its impact on Brocade, defendant Carney stated:

"The combined company will be able to deliver superior focus and speed of innovation and best-in-class solutions spanning the full spectrum of networking . . . . Our combined world-class portfolio now provides customers with greater flexibility in meeting today's infrastructure requirements, including high performance, flexible, secure access networks. We are thrilled to welcome the Ruckus team to Brocade and look forward to working together to help our customers transform their networks into an open platform for business innovation."

46.     On August 25, 2016, Brocade reported its financial results from operations for the third quarter of fiscal year 2016 ended July 30, 2016. The Company reported third quarter revenue of $591 million, up 7% year-over-year and up 13% quarter-over-quarter. Brocade's third quarter 2016 IP Networking product revenue of $209 million, including $73 million of product revenue from Ruckus, was up 36% year-over-year. The increase was due to the acquisition of Ruckus. Sequentially, IP Networking product revenue *increased 59% due primarily to the inclusion of Ruckus revenue*.

47.     Moreover, post-closing observations from analysts who cover Brocade noted Ruckus was performing "better than expected":

(a)     "[R]esults . . . were slightly above the high-end of guidance, driven by a strong contribution from Ruckus. . . . [T]he Ruckus acquisition is performing better than expected . . . ." Piper Jaffray Research Report, August 25, 2016

(b)     "[T]he integration has gone well and the Ruckus business is tracking ahead of plan." Craig-Hallum Capital Group Research Report, September 22, 2016

48.     On November 21, 2016, Brocade reported its financial results from operations for the fourth quarter and fiscal year 2016 ended October 29, 2016.   Brocade reported fourth quarter revenue of $657 million, an increase of 12% year-over-year and 11% quarter-over-quarter.   Revenue for fiscal year 2016 was $2,346 million, up 4% year-over-year.   Non-GAAP diluted EPS was $0.33 for the fourth quarter and $1.04 for fiscal year 2016, up 27% and 3% year-over-year, respectively.

49.     Significantly, Brocade's fourth quarter 2016 IP Networking product revenue was $256 million, *up 51% year-over-year and up 22% quarter-over-quarter*.   The fourth quarter year-over-year increase was *primarily driven by the inclusion of $96 million of Ruckus product revenue*, following the acquisition in the third quarter of fiscal 2016.   For fiscal year 2016, IP Networking product revenue was $730 million, *up 21% year-over-year, primarily due to the inclusion of five months of revenue from Ruckus*.

50.     Commenting on these results, defendant Carney stated:

> "Fiscal 2016 was a year of significant accomplishment . . . .   We delivered record revenue and expanded our market reach to address critical requirements at the network edge through our acquisition of Ruckus Wireless. In addition, we provided our customers with significant innovations across our product portfolio, including Gen 6 Fibre Channel, data center automation, Ruckus Cloud Wi-Fi, and next-generation data center routing. With a range of new IP Networking solutions expected to launch in the first quarter of fiscal 2017, we continue to advance our roadmap and help our customers transform their networks for digital business."

**The Proposed Acquisition Is Announced**

51.     Despite Brocade reporting record revenue in 2016, as well as earnings increases in the fourth quarter and full year 2016, and despite 2016 being a year of significant accomplishment for Brocade – including its acquisition of Ruckus Wireless – the Board decided to sell the Company, and for an unfair price.

52.     On November 2, 2016, Brocade and Broadcom announced that they had entered into the Merger Agreement, pursuant to which Broadcom will acquire Brocade for just $12.75 in cash per Brocade share.   Following the consummation of the Proposed Acquisition, Brocade will survive as a wholly-owned subsidiary of LSI.

53.     The press release announcing the Proposed Acquisition states in pertinent part:

**Broadcom Limited to Acquire Brocade Communications
Systems Inc. for $5.9 Billion**

- *Broadcom to retain Brocade's Fibre Channel SAN Switching business and divest Brocade's IP Networking business, including recently acquired Ruckus Wireless*

- *Strategic acquisition strengthens Broadcom's portfolio of enterprise storage and networking solutions serving OEM customers*

- *$900 million of pro-forma non-GAAP EBITDA expected to be added in FY2018*

- *Immediately accretive to Broadcom's non-GAAP EPS*

. . . Broadcom Limited and Brocade Communications Systems, Inc. today announced that they have entered into a definitive agreement under which Broadcom will acquire Brocade, a leader in Fibre Channel storage area network ("FC SAN") switching and IP networking, for $12.75 per share in an all-cash transaction valued at approximately $5.5 billion, plus $0.4 billion of net debt. Broadcom expects to fund the transaction with new debt financing and cash available on its balance sheet. Broadcom, with the support of Brocade, plans to divest Brocade's IP Networking business, consisting of wireless and campus networking, data center switching and routing, and software networking solutions.

"This strategic acquisition enhances Broadcom's position as one of the leading providers of enterprise storage connectivity solutions to OEM customers," stated Hock Tan, President and Chief Executive Officer of Broadcom. "With deep expertise in mission-critical storage networking, Brocade increases our ability to address the evolving needs of our OEM customers. In addition, we are confident that we will find a great home for Brocade's valuable IP networking business that will best position that business for its next phase of growth."

"This transaction represents significant value for our shareholders, who will receive a 47% premium from the Brocade closing share price on Friday, October 28, 2016, and creates new opportunities for our customers and partners," said Lloyd Carney, Chief Executive Officer of Brocade. "Our best-in-class FC SAN solutions will help Broadcom create one of the industry's broadest portfolios for enterprise storage. We will work with Broadcom as it seeks to find a buyer for our IP Networking business which includes a full portfolio of open, hardware and software-based solutions spanning the core of the data center to the network edge."

Upon closing, the transaction is expected to be immediately accretive to Broadcom's non-GAAP free cash flow and earnings per share. Broadcom currently anticipates that Brocade's FC SAN business will contribute approximately $900 million of pro forma non-GAAP EBITDA in its fiscal year 2018.

The board of directors of Brocade and the Executive Committee of the board of directors of Broadcom have unanimously approved the transaction, which is presently expected to close in the second half of Broadcom's fiscal year 2017 which commenced on October 31, 2016, subject to regulatory approvals in various jurisdictions, customary closing conditions as well as the approval of Brocade's stockholders. The closing of the transaction is not subject to any financing conditions, nor is it conditioned on the divestiture of Brocade's IP Networking business.

54.    In the Proxy, Brocade revealed that on December 19, 2016, Parent assigned all of its rights under the Merger Agreement and transferred all of the issued and outstanding capital stock of Merger Sub to LSI.  In accordance with the terms of the Merger Agreement, such assignment does not relieve Ultimate Parent, Parent or Merger Sub of any of their respective obligations under the Merger Agreement or enlarge, alter or change any obligation of any other party under the Merger Agreement. Pursuant to the Merger Agreement, Merger Sub will be merged with and into the Company and the Company will continue its existence as a wholly-owned subsidiary of LSI.

**Disabling Conflicts Infect the Process**

55.    The Proposed Acquisition is the result of an unfair sales process designed to ensure that only Broadcom has an opportunity to acquire the Company.  The Proposed Acquisition was driven by the Board and members of Company management who seek through the deal to secure liquidity for their over 7.6 million shares of illiquid Brocade stock.  If the Proposed Acquisition closes, the Board and Company officers will receive *over $97 million* for their illiquid Brocade holdings.

56.    Moreover, Board members agreed to deliver the Company to Broadcom in order to secure special material benefits for themselves and management as a result of the Proposed Acquisition, including the accelerated vesting and monetization of illiquid equity holdings in the Company.  The Board will receive accelerated vesting of all members' unvested stock options and unvested restricted stock units, a special benefit not made available to Brocade's public shareholders. Members of management are also eligible to receive millions of dollars in change-of-control and/or retention benefits.

57.    And as noted in the Proxy at 73, in addition to "cashing in" their illiquid holdings, members of Company management may stay on board after the transaction, and may be permitted to participate in the equity of Ultimate Parent.

58.    The Board also breached its duties by retaining a conflicted financial advisor, Evercore Group L.L.C. ("Evercore"), and inducing its support for the Proposed Acquisition. Evercore advised Broadcom Corporation in its February 2016 sale to Avago Technologies Limited (both of which are now owned by Ultimate Parent), for which Evercore received a $10 million fee.

59.     Even though Evercore was already conflicted to act in favor of the deal, the Board added one more big motivator: for its service as financial advisor to Brocade, Evercore will receive a *$35.6 million fee* – $2 million of which was earned by Evercore's fairness opinion, with the remaining $33.6 million being wholly contingent on the closing of the merger.

**The Conflicted Process Led to an Unfair Price**

60.     The Proposed Acquisition significantly undervalues Brocade.  First, at least one analyst's high price target for Brocade common stock was $14.00, or $1.25 above the offer price. Second, as discussed above, Brocade has rebounded from a temporary industry downturn and is reporting record revenues as a standalone company.  Third as noted above, Brocade's May 2016 acquisition of Ruckus has added significantly to the Company's IP Networking product revenue, which business Broadcom does not value, as it intends to dispose of the Company's IP Networking segment immediately following the closing of the Proposed Acquisition.  Furthermore, Evercore's fairness analyses (Proxy at 55-56) includes a discounted cash flow analysis of the Ruckus business, which, when included in a sum of the parts analysis of the value of Brocade by business segment, indicates an implied equity value per share range for the Company of $12.30 to $16.50.  Clearly the Proposed Acquisition consideration of just $12.75 per share materially shortchanges Brocade's stockholders.

61.     The  Proposed Acquisition consideration of $12.75 per Brocade share is also unfair and undervalued when contrasted with the combined Brocade/Ruckus valuation done by Morgan Stanley as set forth in the Solicitation/Recommendation Statement on Schedule 14D-9 filed in connection with the Brocade/Ruckus merger on April 29, 2016 (the "Ruckus 14D-9").  In the Ruckus 14D-9, Morgan Stanley calculated the implied value of the consideration to be received per Ruckus share (the "Offer Consideration").  *Id.* at 38.  Using Ruckus management's case forecasts and Brocade's analogous "Mid Range Forecasts," Morgan Stanley valued the Offer Consideration at a range of $17.61 to $22.35 for each Ruckus share.  Because Brocade offered $6.45 in cash and 0.75 shares of Brocade stock for each Ruckus share, Brocade's implied valuation embedded in Morgan Stanley's analysis can be derived.  Given Morgan Stanley's per Ruckus share valuation of the Offer

1　Consideration at between $17.61 and $22.35, its implied valuation of Brocade is $14.88 to $21.20

2　per Company share, well above Broadcom's offer of $12.75 per share to acquire Brocade.

3　　　　62.　　The Proposed Acquisition price also fails to reflect Brocade's value to Broadcom. As

4　reported in the announcement of the deal, according to Hock Tan, Broadcom's President and CEO,

5　the transaction will provide significant strategic benefits to Broadcom by "enhanc[ing its] position as

6　one of the leading providers of enterprise storage connectivity solutions . . . [and] increas[ing its]

7　ability to address the evolving needs of [its] customers."

8　　　　63.　　Moreover, upon closing, the transaction is expected to add immediately to

9　Broadcom's adjusted free cash flow and EPS. Broadcom anticipates the new business will add about

10　$900 million to adjusted EBITDA in fiscal 2018. Broadcom also increased its long-term operating

11　margin target to 45% from 40%.

12　**Preclusive Deal Protection Devices**

13　　　　64.　　Moreover, defendants agreed to preclusive deal protection devices in the Merger

14　Agreement that create a playing field that is unfairly tilted in favor of Broadcom and effectively chill

15　any potential auction process for the Company, including "no shop" and matching rights provisions

16　and an excessive $195 million termination fee:

17　　　　　　(a)　　The Merger Agreement contains a "no solicitation" provision that bars the

18　Company and its representatives from soliciting interest in Brocade from other potential strategic

19　partners. To the extent that such discussions were already occurring, the Merger Agreement requires

20　that the Company terminate them. Though there is a "fiduciary out" provision that allows the Board

21　to negotiate with bidders when those negotiations are reasonably likely to lead to a superior offer, the

22　Merger Agreement contains enough protections to make this section merely window dressing.

23　　　　　　(b)　　The Merger Agreement also includes a matching rights provision. In the

24　event the Company enters into negotiations with a third party, it must immediately provide

25　Broadcom with notice of this occurrence, the name of the third party, and provide Broadcom with

26　the same documents it plans to supply the third party. In addition, even if a superior offer for the

27　Company does emerge, the Company is required to give Broadcom the opportunity to negotiate and

28　make a counter offer so that the competing offer is no longer superior.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS　　　　　- 13 -

(c)      Further, the Merger Agreement imposes an excessive $195 million termination fee on the Company.  This provision will penalize and effectively deter the Company and its fiduciaries from considering superiors offers.  When combined with the no-solicitation provision, the termination fee will serve to ward off potential bidders, given the additional cost of acquiring the Company.

65.      These onerous and preclusive deal protection devices, which will serve to unreasonably deter and discourage superior offers from other interested parties, were agreed to by the Individual Defendants to help secure the personal benefits and unfair profits afforded to them through the Proposed Acquisition and all but ensure that no superior proposals will emerge for the Company.

**The False and Misleading Proxy**

66.      In order to encourage and obtain shareholder votes in favor of the Proposed Acquisition, defendants filed and disseminated to shareholders the materially misleading Proxy in contravention of §14(a) of the 1934 Act.  The Proxy, which recommends that Brocade shareholders vote in favor of the Proposed Acquisition, omits and/or misrepresents material information about the Company's inherent value and the fairness analyses performed by the Company's financial advisor, Evercore.  Without this material information, Brocade shareholders are prevented from making a fully informed decision as to the adequacy of the Proposed Acquisition consideration and whether to vote in favor of the merger.  Specifically, the Proxy omits and/or misrepresents the material information set forth below in contravention of §14(a) of the 1934 Act.

67.      Defendants made material misstatements and otherwise failed to disclose material information in the Proxy about the Company's intrinsic value and prospects going forward, including:

(a)      the financial projections provided by Brocade and relied upon by Evercore for purposes of its fairness analyses, including for fiscal years 2016 - 2021 and the terminal period, for the following items:

(i)      EBIT (or D&A);

(ii)      Taxes (or tax rate);

1      (iii)  Any other adjustments to unlevered free cash flow;

2      (iv)  Unlevered free cash flow (including terminal period);

3      (v)  Aggregate changes in net working capital;

4      (vi)  Aggregate capital expenditures;

5      (vii)  Any other adjustments to unlevered free cash flow;

6      (viii)  Aggregate unlevered free cash flow; and

7      (ix)  Unlevered free cash flow by specific product (if available);

8    (b)  of the two management case forecasts (September or October) the one deemed

9 more relevant by Evercore in its analysis; and

10    (c)  any forecast relied upon by Company management prepared on a GAAP

11 basis, and the departures from GAAP in each of the forecasts.

12    68.  In order to determine whether to vote for or against a transaction like the one at the

13 heart of this case, it is critical that shareholders receive the material information underlying or

14 supporting the Company's inherent value and, most critically, management's views about the

15 financial future of the Company.  The omission of this information is material because financial

16 projections contain management's best estimates of the Company's free cash flow and revenue

17 streams, and unless the projections are fully disclosed shareholders cannot assess whether they

18 believe that the Company is worth more on a standalone basis than the consideration offered by

19 Broadcom, and thus cannot make the determination whether to vote in favor of the Proposed

20 Acquisition.  Without this information, shareholders cannot evaluate whether to vote in favor of or

21 against the merger.

22    69.  Defendants also made several materially misleading statements or otherwise failed to

23 disclose material information in the Proxy about critical data and inputs underlying the financial

24 analyses supporting the fairness opinion of Brocade's financial advisor Evercore, including:

25    (a)  with respect to Evercore's *Selected Publicly Traded Companies Analysis*

26 (Proxy at 51-52),

27      (i)  of the three comparable company groups reviewed, whether and which

28 one group was considered more applicable to Brocade than the others; and

1               (ii)        whether Evercore performed any type of benchmarking analysis for

2  Brocade in relation to the selected companies;

3           (b)     with respect to Evercore's *Selected Precedent Transactions Analysis* (*id*. at

4  53-54),

5              (i)      of the 28 precedent transactions, spanning an 8-year period, whether

6  any precedent transaction was more relevant or considered more applicable to Brocade than the

7  others; and

8             (ii)      the EV/LTM net sale, EV/LTM EBITDA, and EV/LTM EBIT

9  multiples for each of the selected transactions analyzed by Evercore;

10         (c)     with respect to Evercore's *Discounted Cash Flow Analysis* (*id*. at 50-51),

11            (i)      the definition of "unlevered free cash flow" utilized by Evercore in its

12  analysis;

13             (ii)      the definition of "adjusted EBITDA" utilized by Evercore in its

14  analysis;

15           (iii)     the individual inputs and assumptions that Evercore used to derive the

16  discount rate range of 8.5%-11.0%;

17           (iv)     how Evercore treated stock-based compensation expense (*i.e.*, as a

18  cash or non-cash expense); and

19           (v)      the net cash (debt) utilized by Evercore in this analysis;

20         (d)     with respect to Evercore's *Sum of the Parts Analysis* (*id*. at 55-56)*,*

21            (i)      how the values for each of the Company's operations were

22  determined; and

23            (ii)      the specific inputs or assumptions relied upon for each of the

24  operations (*e.g.*, multiples, discounted cash flow analyses);

25         (e)     with respect to Evercore's *Present Value of Future Share Price* (*id*. at 56), the

26  basis for selecting an 11.0x P/E ratio; and

27         (f)     with respect to Evercore's *Leveraged Buyout Analysis* (*id*. at 57*),*

28            (i)      the cost of debt utilized by Evercore in its analysis; and

1            (ii)        the leverage multiple selected by Evercore.

2       70.    There is no information more material to shareholders in a merger than the

3 information underlying or supporting the purported "fair value" of their shares.  Shareholders are

4 entitled to the information necessary to inform a decision as to the adequacy of the merger

5 consideration, which includes the ***underlying data*** (including management's projections) the

6 investment bankers relied upon, the ***key assumptions*** that the financial advisors used in performing

7 valuation analyses, and the range of values that resulted from those analyses.  Here the analyses of

8 Evercore incorporated certain critical assumptions that significantly affected the output (valuation)

9 of the analyses.  Without this material information, shareholders have no basis on which to judge the

10 adequacy of Broadcom's offer.

11       71.    For example, the Proxy's omissions of the specific inputs and assumptions that

12 Evercore used, *inter alia*, to calculate the discount rate range it employed are material.  The choice

13 of multiples has a dramatic effect on the output of a discounted cash flow analysis.  This will allow

14 Brocade stockholders to determine if the discount rate chosen and/or terminal multiple are

15 appropriate, and, if not, select their own to arrive at a value for the Company that more appropriately

16 values its equity risk, debt service profile and prospects.

17       72.    Defendants were aware of the requirement under the federal securities laws to

18 disclose the foregoing material information in the Proxy and acted with that knowledge in failing to

19 ensure that this material information was disclosed in the Proxy.  Absent disclosure of this material

20 information, shareholders are unable to make an informed decision about whether to vote for or

21 against the Proposed Acquisition, and are thus threatened with irreparable harm.

22       73.    As explained above, the omitted information is material to the decision of Brocade's

23 shareholders whether or not to vote in favor of the Proposed Acquisition.  As such, defendants'

24 violations of §§14(a) and 20(a) of the 1934 Act threaten shareholders with irreparable harm for

25 which money damages are not an adequate alternate remedy.  Thus, plaintiff seeks injunctive relief

26 to ensure that defendants cure their violations of §§14(a) and 20(a) and comply with their duty under

27 the federal securities laws to provide shareholders with all material information about the fairness of

28 the merger consideration and the Company's intrinsic value.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS      - 17 -

74.    Plaintiff seeks to enjoin the Proposed Acquisition.

## COUNT I

### For Violations of §14(a) of the 1934 Act and Rule 14a-9
### Promulgated Thereunder Against the Individual Defendants and Brocade

75.    Plaintiff repeats and realleges each allegation set forth herein.

76.    The Individual Defendants and Brocade disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

77.    The Proxy was prepared, reviewed and/or disseminated by the Individual Defendants and Brocade.  It misrepresented and/or omitted material facts, including material information about the unfair sales process for the Company, the unfair consideration offered in the Proposed Acquisition, and the actual intrinsic value of the Company's assets.

78.    In the Proxy, the Individual Defendants and Brocade made untrue statements of material fact and omitted to state material facts necessary to make the statements made not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.  By virtue of their positions, the Individual Defendants and Brocade were aware of this information and of their duty to disclose this information in the Proxy.

79.    The Individual Defendants and Brocade were at least negligent in filing the Proxy with these materially false and misleading statements.

80.    The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote on an acquisition.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in a proxy and in other information reasonably available to shareholders.

81.    By reason of the foregoing, the Individual Defendants and Brocade have violated §14(a) of the 1934 Act and SEC Rule 14a-9(a) promulgated thereunder.

82.     Because of the false and misleading statements in the Proxy, plaintiff is threatened with irreparable harm, rendering money damages inadequate.   Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against the Individual Defendants, Ultimate Parent and Parent

83.     Plaintiff repeats and realleges each allegation set forth herein.

84.     The Individual Defendants acted as controlling persons of Brocade within the meaning of §20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Brocade and their participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.

85.     Each of the Individual Defendants, Ultimate Parent and Parent was provided with or had unlimited access to copies of the Proxy and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

86.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Acquisition.  They were thus directly involved in the making of this document.

87.     Ultimate Parent and Parent also had direct supervisory control over Brocade, pursuant to the Merger Agreement, which restricts the conduct of Brocade's business prior to the consummation of the merger, subject to specific limitations, which may delay or prevent Brocade from undertaking business opportunities that may arise before the completion of the merger and that,

1    absent the Merger Agreement, Brocade might have pursued. Among other things, Ultimate Parent
2    and Parent had direct supervisory control over the preparation and dissemination of the Proxy,
3    including the composition of the Proxy and the information disclosed therein, as well as the
4    information that was omitted and/or misrepresented in the Proxy.

5        88.    In addition, as the Proxy sets forth at length, the Individual Defendants, Ultimate
6    Parent and Parent were each involved in negotiating, reviewing and approving the Proposed
7    Acquisition. The Proxy purports to describe the various issues and information that they reviewed
8    and considered, descriptions which had input from the Individual Defendants, Ultimate Parent and
9    Parent.

10        89.    By virtue of the foregoing, the Individual Defendants, Ultimate Parent and Parent
11    have violated §20(a) of the 1934 Act.

12        90.    As set forth above, the Individual Defendants, Ultimate Parent and Parent had the
13    ability to exercise control over and did control a person or persons who have each violated §14(a)
14    and SEC Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as
15    controlling persons, these defendants are liable pursuant to §20(a) of the 1934 Act. As a direct and
16    proximate result of defendants' conduct, Brocade shareholders will be irreparably harmed.

17                                **PRAYER FOR RELIEF**

18        WHEREFORE, plaintiff demands injunctive relief, in plaintiff's favor and in favor of the
19    Class and against defendants, as follows:

20        A.    Determining that this action is a proper class action, designating plaintiff as Lead
21    Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil
22    Procedure and plaintiff's counsel as Lead Counsel;

23        B.    Enjoining defendants, their agents, counsel, employees and all persons acting in
24    concert with them from consummating the Proposed Acquisition, unless and until they comply with
25    their duties under §§14(a) and 20(a) of the 1934 Act to provide shareholders with all material
26    information about the unfair consideration offered in the Proposed Acquisition, and the actual
27    intrinsic value of the Company;

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS            - 20 -

1    C.    Rescinding, to the extent already implemented, the Merger Agreement or any of the

2  terms thereof;

3    D.    Awarding plaintiff the costs and disbursements of this action, including reasonable

4  attorneys' and experts' fees; and

5

6    E.    Granting such other and further equitable relief as this Court may deem just and

7  proper.

**JURY DEMAND**

8

Plaintiff demands a trial by jury.

9

DATED:  January 18, 2017                    ROBBINS GELLER RUDMAN

10                                                            & DOWD LLP
                                                         DAVID T. WISSBROECKER
11                                                      EDWARD M. GERGOSIAN

12

13                                                              *s/ David T. Wissbroecker*
                                                         DAVID T. WISSBROECKER
14

15                                                      655 West Broadway, Suite 1900
                                                         San Diego, CA  92101
16                                                      Telephone:  619/231-1058
                                                         619/231-7423 (fax)

17                                                      JOHNSON & WEAVER, LLP
                                                         W. SCOTT HOLLEMAN
18                                                      99 Madison Avenue, 5th Floor
                                                         New York, NY  10016
19                                                      Telephone:  212/802-1486
                                                         212/602-1592 (fax)

20

Attorneys for Plaintiff

21  I:\Admin\CptDraft\Deal\CPT Brocade_Fed.docx

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                    - 21 -

DocuSign Envelope ID: BA0EDF62-3D44-48FE-8606-F10657D75E26

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

Bobby M. Mathew ("Plaintiff") declares:

1.     Plaintiff has reviewed a complaint and authorized its filing.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:  plaintiff held 35,771 shares of Brocade Communications stock as of December 12, 2016, and continues to hold those shares through the date of this certification.

5.     Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

None.

6.     The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13 day of January, 2017.



Bobby M. Mathew

BROCADE